1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12  CALIFORNIA VALLEY MIWOK TRIBE,
                                        NO. CIV. 08-984 WBS GGH
         Plaintiff,

13

                                        ORDER RE: MOTION FOR REMAND,
14                                      MOTION TO DISMISS, AND MOTION
                                        TO INTERVENE

15       v.

16

17  THE CALIFORNIA GAMBLING CONTROL
    COMMISSION; and DOES 1 through
18  50, inclusive,

19       Defendant.

20  _____/

21                        ----oo0oo----

22          Plaintiff California Valley Miwok Tribe filed an action

23  in state court to enforce its alleged third party beneficiary

24  right to receive payments from the Indian Gaming Revenue Sharing

25  Trust Fund ("RSTF").[1]  The RSTF trustee, defendant California

26  _____

27       [1]    Although the "California Valley Miwok Tribe" is the
    named plaintiff in this action, the court recognizes that members
28  of the tribe dispute whether Silvia Burley, the tribal member who

                                  1

Gambling Control Commission, removed the case to federal court
and venue was subsequently transferred to this court.  Presently
before the court are plaintiff's motion to remand the case to
state court, defendant's motion to dismiss, and Yakima K. Dixie
and Melvin Dixie's motion to intervene.

I.   Factual and Procedural Background

     In 1994, Congress enacted the Federally Recognized
Tribes List Act, 25 U.S.C. § 479a-1, and plaintiff's name was
placed on the list of federally recognized tribes.  (Compl. ¶ 8.)
As of the date plaintiff initiated this lawsuit, its name
remained on that list.  (Id. at ¶ 6); see also Cal. Valley Miwok
Tribe, 515 F.3d at 1265 (indicating that plaintiff is a
"federally recognized Indian tribe").  In 1998, plaintiff
established a tribal council and, on June 25, 1999, the Bureau of
Indian Affairs (BIA) recognized Silvia Burley as the tribal
chairperson.  (Compl. ¶ 8.)  In late 1999, however, a leadership
dispute developed between Burley and other putative tribe
members, including the alleged hereditary chief, Yakima K. Dixie,
and his brother, Melvin Dixie.  (Id. at ¶ 9; Dixie's Mem. in
Supp. of Mot. to Interve05ne 2:10-13.)

     In September of 2001, plaintiff adopted a new
constitution; however, the BIA declined to approve the proposed

has pursued this action on behalf of plaintiff, has the authority
to do so.  The court does not express an opinion on this issue.
See also Cal. Valley Miwok Tribe v. United States, 515 F.3d 1262,
1263 n.1 (D.C. Cir. 2008) ("Throughout, we refer to Burley rather
than 'CVM' or 'the tribe' because we are mindful that there is an
ongoing leadership dispute between Burley and former tribal
chairman Yakima Dixie.  Both claim to represent the tribe, and
Dixie filed an amicus brief in this case in support of the United
States.  We pass no judgment on that dispute").

constitution and classified plaintiff as an "unorganized" tribe
on October 31, 2001.  (Compl. ¶ 10.)  About two years later, the
BIA recognized a "government-to-government relationship" with
plaintiff through the tribal council Burley allegedly chaired.
(Id. at ¶ 11.)  On March 26, 2004, the BIA indicated that it
recognized Burley as only "a person of authority" and requested
plaintiff to submit a new constitution that more accurately
identified plaintiff's membership base.  (Id. at ¶ 12.)

Due to plaintiff's "unorganized" status and the BIA's
recognition of Burley as only "a person of authority," defendant
notified plaintiff in August of 2005 that it would not disburse
plaintiff's funds pursuant to California's Tribal-State Gaming
Compacts ("Compacts").  (Id. at ¶ 15.)  Plaintiff's right to
receive such funds originated in 1999 when, pursuant to the
Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721, 18
U.S.C. §§ 1166-1168, California entered into Compacts with
numerous California Indian tribes.  (Compl. Ex. 1 at § 4.3.2-
4.3.2.1.)  The Compact each tribe executed was substantially
similar and allowed the compacting tribe to operate gambling
facilities in exchange for regulations and financial commitments.
(Id. at ¶ 5, Ex. 1.)

While plaintiff was not a compact tribe, it qualified
as a non-compact tribe because it was a "[f]ederally-recognized
tribe[] . . . operating fewer than 350 Gaming Devices."  (Id. Ex.
1 at § 4.3.2.)  As a non-compact tribe, plaintiff became a third
party beneficiary of the Compacts and was entitled to receive
$1.1 million per year from the RSTF, which the Compacts created
and the compact tribes funded through gambling revenues.  (Id.

Ex. 1 at §§ 4.3.2.1(a), 5.0.)  The Compacts required defendant, as trustee of the RSTF, to disburse RSTF payments on a quarterly basis to non-compact tribes.  (<u>Id.</u> at § 4.3.2.1(b).)  In doing so, defendant had "no discretion with respect to the use or disbursement of the trust funds."  (<u>Id.</u>)  As of September 30, 2007, defendant had withheld $3,121,397.76 in RSTF funds that plaintiff was allegedly entitled to pursuant to the Compacts.[2] (<u>Id.</u> at ¶ 18.)

On January 7, 2008, plaintiff filed its Complaint in the Superior Court for the County of San Diego, Central District, alleging claims for: 1) injunctive relief; 2) declaratory relief; 3) breach of contract; 4) breach of fiduciary duty; and 5) intentional interference with a prospective economic advantage (alleged against only Does twenty-one through fifty).[3]  Defendant removed the action to the United States District Court for the

---

[2]     Defendant contends that it "began depositing the [plaintiff's] RSTF funds into a separate interest bearing account pending the federal government's resolution of the questions surrounding the [plaintiff's] status and the identity of its membership, government and leadership." (Def.'s Mem. in Supp. of Mot. to Dismiss 7:4-7.)

[3]     Based on plaintiff's fifth cause of action, defendant contends this court has jurisdiction because, as a "prerequisite" to resolving plaintiff's claims, the court must resolve the underlying tribal leadership dispute. (Def.'s Mem. in Opp'n to Pl.'s Mot. to Remand 2:13-17.)  The court, however, cannot resolve plaintiff's leadership dispute because "[j]urisdiction to resolve internal tribal disputes, interpret tribal constitutions and laws, and issue tribal membership determinations lies with Indian tribes and not in the district courts." <u>In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.</u>, 340 F.3d 749, 764 (8th Cir. 2003) (citing <u>United States v. Wheeler</u>, 435 U.S. 313, 323-36 (1978)) (additional citations omitted).  Therefore, assuming the underlying leadership dispute appears on the face of plaintiff's well-pled Complaint, neither that dispute nor plaintiff's fifth cause of action give rise to federal question jurisdiction.

4

Southern District of California, then moved to change venue and
to dismiss the case.  After voluntarily dismissing its third
(breach of contract) and fourth (breach of fiduciary duty)
claims,[4] plaintiff moved to remand the case to state court.  On
April 23, 2008, the court granted defendant's motion to change
venue and transferred the case to this district.  After the
transfer to this district, Yakima K. Dixie and Melvin Dixie filed
a motion to intervene pursuant to Federal Rule of Civil Procedure
24.

　　　　"Under the 'law of the case' doctrine, 'a court is
generally precluded from reconsidering an issue that has already
been decided by the same court, or a higher court in the
identical case.'"  <u>United States v. Alexander</u>, 106 F.3d 874, 876
(9th Cir. 1997) (citation omitted).  In its Order granting
defendant's motion to transfer venue, the District Court for the
Southern District of California stated that "[a] preliminary
review of Plaintiff's Complaint indicates that Plaintiff could
have properly filed this case in the United States District Court

---

[4]　　Although defendant initially asserted Eleventh
Amendment immunity with respect to plaintiff's third and fourth
causes of action for damages, defendant withdrew this defense
after plaintiff voluntarily dismissed those claims.  (<u>See</u> Def.'s
Reply in Supp. of Mot. to Dismiss 1:n.2); <u>see also</u> Cal. Gov't
Code § 98005 ("[T]he State of California also submits to the
jurisdiction of the courts of the United States in any action
brought against the state by any federally recognized California
Indian tribe asserting any cause of action arising from . . . the
state's violation of the terms of any Tribal-State compact to
which the state is or may become a party."), <u>invalidated in part
by</u> <u>Hotel Employees & Rest. Employees Int'l Union v. Davis</u>, 21
Cal. 4th 585, 589 (1999); <u>see also</u> <u>Lapides v. Bd. of Regents of
Univ. Sys. of Ga.</u>, 535 U.S. 613, 617-18, 620 (2002) (state
voluntarily waives its sovereign immunity when it removes state-
law claims to federal court and had explicitly waived immunity in
the state-court proceedings).

1  for the Eastern District of California. . . . Additionally, it

2  appears Plaintiff's allegations implicate a Tribal-State Compact

3  which the federal courts have jurisdiction to enforce." (Order

4  Apr. 23, 2008 3:16-21.) This court does not understand the

5  transferor court's preliminary remarks about the appearance of

6  jurisdiction to constitute an affirmative finding that

7  plaintiff's Complaint gives rise to federal jurisdiction.

8         An argument could be made, however, that a finding of

9  federal subject matter jurisdiction was implicit in the

10  transferor court's decision to grant defendant's motion to

11  transfer venue. See 28 U.S.C. § 1404 ("For the convenience of

12  parties and witnesses, in the interest of justice, a district

13  court may transfer any civil action to any other district or

14  division where it might have been brought.") (emphasis added).

15  Nonetheless, a transferor court's finding of jurisdiction does

16  not relieve this court of its independent duty to ensure that it

17  only exercises jurisdiction over cases that Congress or the

18  Constitution authorize. See 28 U.S.C. § 1447(c) ("If at any time

19  before final judgment it appears that the district court lacks

20  subject matter jurisdiction, the case shall be remanded."); see

21  also Intercontinental Travel Mktg., Inc. v. F.D.I.C., 45 F.3d

22  1278, 1286 (9th Cir. 1994) ("[A]n objection to subject matter

23  jurisdiction may be raised at any time, by any party or the

24  court."); Hanna Boys Ctr. v. Miller, 853 F.2d 682, 686 n.1 (9th

25  Cir. 1988) ("[T]he law of the case doctrine 'is inapplicable to

26  the question of our jurisdiction to consider an appeal.'")

27  (citation omitted). Therefore, this court must determine whether

28  this case may remain in federal court.

6

II.  Discussion

        "Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed."  Matheson v. Progressive Speciality Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); 28 U.S.C. § 1441(a).  When a plaintiff moves to remand a case, the defendant bears the burden of establishing that removal was proper.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  Any questions regarding the propriety of removal should be resolved in favor of the party moving for remand.  Matheson, 319 F.3d at 1090.  If removal was improper, "the district court lack[s] subject matter jurisdiction, and the action should [be] remanded to the state court."  Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir. 1998) (citing 28 U.S.C. § 1447(c)).

        "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  Stock W., Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir.1989) (citing Cal. ex rel. Younger v. Andrus, 608 F.2d 1247, 1249 (9th Cir. 1979)); see also Meek v. City of Sacramento, 132 F.Supp. 546 (N.D. Cal. 1955).  District courts have "original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution,

1  laws, or treaties of the United States."  28 U.S.C. § 1362.

2       A claim arises under a federal law if it is apparent

3  from the face of the plaintiff's well-pled complaint that "a

4  federal law creates the plaintiff's cause of action."  <u>Virgin v.</u>

5  <u>County of San Luis Obispo</u>, 201 F.3d 1141, 1142-43 (9th Cir.

6  2000); <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987).

7  An action may also arise under federal law "where the vindication

8  of [plaintiff's] right under state law necessarily turn[s] on

9  some construction of federal law."  <u>Merrell Dow Pharms., Inc. v.</u>

10 <u>Thompson</u>, 478 U.S. 804, 808 (1986) (citation omitted); <u>see also</u>

11 <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S.

12 308, 314 (2005) ("[T]he question is, does a state-law claim

13 necessarily raise a stated federal issue, actually disputed and

14 substantial, which a federal forum may entertain without

15 disturbing any congressionally approved balance of federal and

16 state judicial responsibilities.").

17      A.   <u>Claims Under IGRA and the Compacts</u>

18      While plaintiff's allegations derive from Compacts

19 entered into pursuant to IGRA, IGRA's limited grant of federal

20 jurisdiction does not encompass plaintiff's claims.  <u>See</u> 25

21 U.S.C. § 2710(d)(7)(i)-(iii) (assuming the Eleventh Amendment

22 does not bar the claims, IGRA vests federal courts with

23 jurisdiction to hear only 1) claims by a tribe arising from the

24 State's failure to enter IGRA negotiations; 2) claims by a state

25 or tribe to enjoin certain gaming activities; and 3) claims by

26 the Secretary to enforce certain IGRA provisions); <u>see also</u> <u>Hein</u>

27 <u>v. Capitan Grande Band of Diegueno Mission Indians</u>, 201 F.3d

28 1256, 1260 (9th Cir. 2000) ("[P]laintiffs [can] not sue for every

violation of IGRA by direct action under the statute."); <u>cf.</u>
<u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 47 (1996)
("[IGRA] cannot grant jurisdiction over a State that does not
consent to be sued.").

While IGRA does not expressly extend federal
jurisdiction to claims to enforce Compacts, the Ninth Circuit has
held that "IGRA necessarily confers jurisdiction onto federal
courts to enforce Tribal-State compacts and the agreements
contained therein."  <u>Cabazon Band of Mission Indians v. Wilson</u>,
124 F.3d 1050, 1056 (9th Cir. 1997).  <u>But see</u> <u>Wisconsin v.</u>
<u>Ho-Chunk Nation</u>, 463 F.3d 655, 661 (7th Cir. 2006) ("The question
here is: since the IGRA enables and regulates contracts between
tribes and the states, does any dispute arising from the
resulting compact present a question under the IGRA?  We think
not.").

In holding that a federal district court had
jurisdiction to hear four compact tribes' claims to enforce a
provision in their Compacts, the <u>Cabazon</u> court reasoned that a
claim to enforce a Compact created federal question jurisdiction
for two reasons.  First, the court recognized the significance of
the "federal interest at stake [] and the importance of the
enforcement of Tribal-State compacts in the federal courts" to
prevent states from making "empty promises to Indian tribes
during good-faith negotiations of Tribal-State compacts . . . ."
<u>Cabazon Band of Mission Indians</u>, 124 F.3d at 1056.  Second, the
<u>Cabazon</u> court reasoned that, because Congress envisioned
enforcement of Compacts' contractual obligations in federal
court--by allowing Compacts to include remedies and inviting

9

1  waivers of sovereign immunity--"IGRA necessarily confers

2  jurisdiction to the federal courts."  <u>Id.</u>[5]

3          While this court has jurisdiction over compact tribes

4  or the State's claims to enforce Compacts, plaintiff, as a non-

5  compact tribe, lacks the right to enforce the Compacts.  <u>See</u>

6  <u>Unite Here v. Pala Band of Mission Indians</u>, 184 L.R.R.M. 2365,

7  2368-69 (S.D. Cal. 2008) (interpreting <u>Cabazon</u> as applying only

8  to Compact <u>signatories</u>).  Section 4.3.2(a)(i) of the Compacts

9  provides that "Non-Compact Tribes shall be deemed third party

10 beneficiaries of this and other compacts identical in all

11 material respects."  (Compl. Ex. 1 at 4.3.2.)  Assuming plaintiff

12 comes within the Compacts' definition of "Tribe,"[6] it is

13 undisputed that it would qualify as a non-compact tribe and a

14 third party beneficiary under section 4.3.2(a)(i).  Ordinarily,

15 the Compacts' identification of plaintiff as a third party

16 beneficiary would entitle it to enforce the Compacts.  <u>See</u> Cal.

17 Civ. Code § 1559 ("A contract, made expressly for the benefit of

18 a third person, may be enforced by him at any time before the

19 parties thereto rescind it.").

20 _____

21       [5]    In his dissent, Judge Wiggins questioned the majority's
22 "terse . . . conclusion that the nature of the federal interest
   in this case is substantial enough to warrant concluding that
23 IGRA confers jurisdiction" and remained unconvinced by its "'IGRA
   is not so vacuous' argument."  <u>Cabazon Band of Mission Indians</u>,
24 124 F.3d at 1062-64 (Wiggins, J. dissenting).

25       [6]    The Compacts indicate that a "Tribe" is "a federally-
   recognized sovereign Indian tribe," define "Tribe" as "a
26 federally-recognized Indian tribe, or an authorized official or
   agency thereof," and define "Non-Compact Tribe" as "[f]ederally-
27 recognized tribes that are operating fewer than 350 Gaming
   Devises . . . ."  (<u>Id.</u> Ex. 1 at 1, §§ 2.21, 4.3.2(a)(1).)  The
28 court need not determine whether plaintiff qualifies as a non-
   compact tribe.

1    Conflicting with section 4.3.2(a)(i)'s use of the term

2  "third party beneficiary," however, is the Compacts' clear intent

3  to allow only compacting tribes and the State to enforce the

4  Compacts.  Specifically, section 15.1 unambiguously limits third

5  party beneficiary rights:  "Third Party Beneficiaries.  Except to

6  the extent expressly provided under this Gaming Compact, this

7  Gaming Compact is not intended to, and shall not be construed to,

8  create any right on the part of a third party to bring an action

9  to enforce any of its terms."  (Compl. Ex. 1 at § 15.1 (emphasis

10 added).)  Because section 15.1 is titled "Third Party

11 Beneficiaries," the court finds that the parties unequivocally

12 intended the limitation in that section to apply to the third

13 party beneficiaries identified in the Compacts.

14    Not only do the Compacts fail to "expressly provide"

15 for third party beneficiaries to enforce any of the terms, (see

16 id. Ex. 1 at § 4.3.2.1(a) (providing for non-compact tribes to

17 receive $1.1 million per year from the RSTF, but declining to

18 grant recipient tribes the power to enforce their receipt of RSTF

19 payments)), the parties' intent to preclude enforcement actions

20 by non-compact tribes is also clear from the compact tribes and

21 State's exclusion of third parties from their waivers of

22 sovereign immunity.  (See id. Ex. 1 at §§ 9.4(a)(3), 9(b)

23 ("[N]othing herein shall be construed to constitute a waiver of

24 the sovereign immunity of either the Tribe or the State in

25 respect to any [] third party.").)

26    Moreover, "[i]t is well settled[] that Civil Code

27 section 1559 excludes enforcement of a contract by persons who

28 are only incidentally or remotely benefited by the agreement."

11

1  Harper v. Wausau Ins. Co., 56 Cal. App. 4th 1079, 1087 (1997).

2  In Martinez v. Socoma Cos., Inc., 11 Cal. 3d 394 (1974), the

3  California Supreme Court held that, even though the government

4  entered into a contract to benefit plaintiffs, plaintiffs were

5  only incidental beneficiaries because the public policy giving

6  rise to the contract prevented plaintiffs from being intended

7  donee beneficiaries with enforcement rights:

8

9      [T]he fact that a Government program for social
betterment confers benefits upon individuals who are not
required to render contractual consideration in return

10  does not necessarily imply that the benefits are intended
as gifts. . . . The benefits of such programs are

11  provided not simply as gifts to the recipients but as a
means of accomplishing a larger public purpose. The

12  furtherance of the public purpose is in the nature of
consideration to the Government, displacing any

13  governmental intent to furnish the benefits as gifts.

14  Id. at 401; see also Zigas v. Superior Court, 120 Cal. App. 3d

15  827, 237 (1981) ("[U]nder Martinez, "standing to sue as a

16  third-party beneficiary to a government contract depends on the

17  intent of the parties as manifested by the contract and the

18  circumstances surrounding its formation.").

19      As expressed in the Compacts, the RSTF served a public

20  purpose that constitutes sufficient consideration to render the

21  non-compact tribes as only incidental third party beneficiaries.

22  (See Compl. Ex. 1 at § A (explaining a primary purpose of the

23  Compacts "as a means of promoting tribal economic development,

24  self-sufficiency, and strong tribal governments").) Therefore,

25  the Compacts' unequivocal intent to limit third party

26  beneficiaries' rights combined with non-compact tribes' status as

27  only incidental beneficiaries preclude plaintiff from enforcing

28  the Compacts.

1    Consequently, because plaintiff cannot assert a claim
2  to enforce the Compacts, the court lacks federal question
3  jurisdiction as contemplated in Cabazon.
4        B.   State Law Claims
5        Recognizing the technical nature of its argument,
6  plaintiff contends that, instead of seeking to enforce the
7  Compacts, plaintiff is only attempting to enforce defendant's
8  duties pursuant to California Government Code sections 12012.75
9  and 12012.90 and to obtain declaratory relief pursuant to
10 California Code of Civil Procedure section 1060.[7]  The court must
11 determine, therefore, whether plaintiff is entitled to relief
12 under any of these state statutes.  If any of the statutes
13 provide a remedy, the court must then determine whether the
14 claims give rise to federal question jurisdiction.
15       Whether a statute provides for a private right of
16 action depends on the Legislature's intent:  "If the Legislature
17 intended a private right of action, that usually ends the
18 inquiry.  If the Legislature intended there be no private right
19 of action, that usually ends the inquiry."  Animal Legal Def.
20 Fund v. Mendes, 160 Cal. App. 4th 136, 142 (2008).  If "the

---

22       [7]   As the Supreme Court has recognized, "[i]t may seem odd
23 that, for purposes of determining whether removal was proper,
   [courts] analyze a claim . . . by a party who has continuously
24 objected to district court jurisdiction over its case, as if that
   party had been trying to get original federal court jurisdiction
25 all along."  Franchise Tax Bd. of State of Cal. v. Constr.
   Laborers Vacation Trust for S., 463 U.S. 1, 20 n.18 (1983).  That
26 "irony," which is further escalated by defendant's concurrently-
   filed motion to dismiss and the parties' inconsistent arguments
27 made in support of or opposition to a respective motion, "is a
   more-or-less constant feature of the removal statute, under which
28 a case is removable if a federal district court could have taken
   jurisdiction had the same complaint been filed."  Id.

1  Legislature expressed no intent on the matter either way,

2  directly or impliedly, there is no private right of action, with

3  the possible exception that compelling reasons of public policy

4  might require judicial recognition of such a right." <u>Id.</u>

5  (citations omitted).

6      To determine legislative intent with respect to a

7  particular statute, the court "first examine[s] the words

8  themselves because the statutory language is generally the most

9  reliable indicator of legislative intent." <u>Hassan v. Mercy Am.</u>

10 <u>River Hosp.</u>, 31 Cal. 4th 709, 715 (2003).  Beyond the statutory

11 language, the court may also ascertain legislative intent from

12 "'the legislative history of the statute and the wider historical

13 circumstances of its enactment . . . .'" <u>Vikco Ins. Servs., Inc.</u>

14 <u>v. Ohio Indem. Co.</u>, 70 Cal. App. 4th 55, 61 (1999) (citations

15 omitted).

16      1.  <u>Section 12012.75</u>

17      California Government Code section 12012.75 provides:

18      There is hereby created in the State Treasury a special
        fund called the "Indian Gaming Revenue Sharing Trust
19      Fund" for the receipt and deposit of moneys derived from
        gaming device license fees that are paid into the fund
20      pursuant to the terms of tribal-state gaming compacts for
        the purpose of making distributions to noncompact tribes.
21      Moneys in the Indian Gaming Revenue Sharing Trust Fund
        shall be available to the California Gambling Control
22      Commission, upon appropriation by the Legislature, for
        the purpose of making distributions to noncompact tribes,
23      in accordance with distribution plans specified in
        tribal-state gaming compacts.

24

25 Cal. Gov't Code § 12012.75.  This section merely creates the RSTF

26 fund within the State Treasury and requires that the funds be

27 availble to defendant "for the purpose of making [RSTF]

28 distributions." <u>Id.</u>  As explicitly contemplated in section

                              14

12012.75, however, defendant's duty to make the distributions begins and ends in the Compacts.  The statutory text of this section thus neither creates an express duty on behalf of defendant to make payments to non-compact tribes nor provides a remedy for non-compact tribes that do not receive their RSTF payments.

The legislative history of section 12012.75 also does not support finding a private right of action.  In 1999, the California Legislature added what is now section 12012.75 to Assembly Bill 1385 ("AB 1385") on the day of its final vote and enrollment.  As originally introduced, therefore, AB 1385 did not contemplate creation of the RSTF and served primarily as a response to a state trial court ruling that "the Governor lacked the requisite authority to execute compacts without legislative approval."  Assembly Committee on Governmental Organization, Committee Analysis of AB 1385, at 2 (Apr. 2, 1999).  Even after the Senate amended AB 1385 to include creation of the RSTF, neither the Legislative Counsel's Digest nor any of the bill analyses suggested that the new law would circumvent the Compacts' limitations on third party beneficiaries' rights.  Plaintiff cannot, therefore, assert a claim under section 12012.75.

2.   <u>Section 12012.90</u>

In relevant part, subsection 12012.90(e) states:

For each fiscal year commencing with the 2005-06 fiscal year . . . (2) The Legislature shall transfer from the Indian Gaming Special Distribution Fund to the Indian Gaming Revenue Sharing Trust Fund an amount sufficient

for each eligible recipient tribe[8] to receive a total not
to exceed two hundred seventy-five thousand dollars
($275,000) for each quarter in the upcoming fiscal year
an eligible recipient tribe is eligible to receive
moneys, for a total not to exceed one million, one
hundred thousand dollars ($1,100,000) for the entire
fiscal year. <u>The California Gambling Control Commission
shall make quarterly payments from the Indian Gaming
Revenue Sharing Trust Fund to each eligible recipient
Indian tribe within 45 days of the end of each fiscal
quarter</u>.

Cal. Gov't Code § 12012.90(e)(2) (emphasis added). Unlike

section 12012.75, the express language of subsection 12012.90(e)

appears to create a duty on behalf of defendant to timely make

payments provided for in the Compacts. Weighing against this

clear duty, however, is the fact that section 12012.90 does not

expressly provide for--or clearly contemplate--a non-compact

tribe bringing a claim to enforce defendant's duties under the

subsection.

Even though "specific legislative" intent to create a

private right of action does not appear in the statute,

defendant's affirmative duty in the statute could give rise to a

private right of action pursuant to Government Code section

815.6, which provides:

Where a public entity is under a mandatory duty imposed
by an enactment that is designed to protect against the
risk of a particular kind of injury, the public entity is
liable for an injury of that kind proximately caused by
its failure to discharge the duty unless the public
entity establishes that it exercised reasonable diligence
to discharge the duty.

Cal. Gov't Code § 815.6; <u>Dep't of Corps. v. Superior Court</u>, 153

---

[8]      Subsection 12012.90(a)(2) defines "eligible recipient
Indian tribe" as "a noncompact tribe, as defined in Section
4.3.2(a)(i) of the tribal-state gaming compacts . . . ." Cal.
Gov't Code § 12012.90(a)(2). Again, the court expresses no
opinion about whether plaintiff qualifies as an eligible
recipient tribe.

Cal. App. 4th 916, 935 (2007) ("Of course, a specific legislative intent need not appear [in a statute] to create a private right of action to enforce that section as it is Government Code 'section 815.6, not the predicate enactment, that creates the private right of action.'").

As section 815.6 requires, subsection 12012.90(e)(2)'s use of the word "shall" imposes a mandatory duty on defendant to make the RSTF requisite payments within forty-five days. <u>See</u> <u>Walt Rankin & Assocs., Inc. v. City of Murrieta</u>, 84 Cal. App. 4th 605, 614 (2000) ("[T]he usual rule with California codes is that 'shall' is mandatory and 'may' is permissive unless the context requires otherwise.") (citation omitted). Contrary to claims section 815.6 normally supports, however, the "mandatory duty" subsection 12012.90(e)(2) creates is not "'designed' to protect against the particular kind of injury the plaintiff suffered." <u>Haggis v. City of Los Angeles</u>, 22 Cal. 4th 490, 499 (2000).

Specifically, the legislative history of Assembly Bill 1750 ("AB 1750"), which enacted subsection 12012.9(e), reveals that the Legislature was concerned about the timeliness of defendant's payments and the benefit of quarterly payments for non-compact tribes. The Legislature's concern, however, did not stem from defendant's decision not to make timely payments, but from defendant's inability to make timely payments because the RSTF had insufficient funds. <u>See</u> Senate Committee on Governmental Organization, Committee Analysis of AB 1750, at 2 (June 29, 2005) ("The sponsor states that the bill seeks to make a technical change to the current provision of law that authorizes a backfill to the []RSTF recipient tribes.  Currently,

1  the [backfill] occurs in a lump sum payment at the end of a

2  fiscal year, which does not afford the recipient, most of which

3  are needy Tribes, to maximize the use of their []RSTF funds.");

4  Assembly Floor, Analysis of AB 1750, at 2 (Aug. 8, 2005) ("Under

5  current law, . . . [non-compact] tribes are distributed a

6  quarterly amount in the range of $100,000 each, and then at the

7  end of each fiscal year, each tribe is paid a backfill amount so

8  that the total annual payments to each non-gaming tribe equates

9  $1.1 million."); Assembly Committee on Appropriations, Committee

10 Analysis of AB 1750, at 2 (May 3, 2005) ("[RSTF] funds are

11 subject to statutory accounting and administrative approval

12 processes as well as some budget act appropriations.  Therefore,

13 distributions seem to be delayed under certain circumstances such

14 as when the budget passes late.").  To remedy the lack of funds

15 available at each quarter, therefore, the Legislature provided

16 for defendant to estimate the total deficient funds that it would

17 encounter for the upcoming year and for the Legislature to then

18 transfer that amount into the RSTF account at the beginning of

19 the fiscal year.[9]

20        The injury plaintiff allegedly suffered as a result of

21 defendant's decision to withhold its RSTF payments, therefore, is

_____

23        [9]    As originally proposed, AB 1750 also provided for the
24 state auditor to review "the timeliness of payments from [a non-
   RSTF account] to recipient local jurisdictions and to backfill
25 the RSTF."  Assembly Analysis of AB 1750, Third Reading, at 3
   (May 26, 2006).  While the review by the state auditor was
26 removed from the final version of AB 1750 (Amended Version of AB
   1750 (June 30, 2005)), the Legislature's decision not to extend
27 the auditor's review to defendant's payment of RSTF funds to non-
   compact tribes underscores that the Legislature was concerned
28 about the insufficient funds in the RSTF account, not defendant's
   willingness to make the payments.

not the "particular kind of injury" the Legislature sought to prevent when it enacted section 12012.90.  <u>Haggis</u>, 22 Cal. 4th at 499.  To the contrary, subsection 12012.90(e) sought only to implement administrative procedures to ensure that the RSTF had sufficient funds at the beginning of a fiscal year, as opposed to the end.  Consequently, neither subsection 12012.90(e) nor section 815.6 provide plaintiff with a private right of action based on defendant's decision to withhold plaintiff's RSTF funds.

The court is also unconvinced that "compelling reasons of public policy [] require judicial recognition" of a private right of action under section 12012.75 or 12012.90.  <u>Animal Legal Def. Fund v. Mendes</u>, 160 Cal. App. 4th 136, 142 (2008).  Most notably, if the court found that plaintiff could use either section as a vehicle to enforce payments allegedly provided for in the Compacts, the court would be circumventing the Compacts' express restrictions--i.e., allowing a third party beneficiary to enforce the Compacts.  <u>See</u> <u>Vikco Ins. Servs., Inc. v. Ohio Indem. Co.</u>, 70 Cal. App. 4th 55, 61 (1999) (citations omitted) ("'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.'").  As the Legislature did not express dissatisfaction with the Compacts' limitations when enacting either statute, the court will not resort to public policy to create a remedy where the Legislature did not intend for one to exist.

Although plaintiff fails to raise the claim, it could potentially seek relief via a writ of mandamus pursuant to California Code of Civil Procedure section 1085, which provides:

A writ of mandate may be issued by any court to any
inferior tribunal, corporation, board, or person, to
compel the performance of an act which the law specially
enjoins, as a duty resulting from an office, trust, or
station, or to compel the admission of a party to the use
and enjoyment of a right or office to which the party is
entitled, and from which the party is unlawfully
precluded by such inferior tribunal, corporation, board,
or person.

Cal. Civ. Proc. Code § 1085(a).  While a "'mandamus may issue to

compel the performance of a ministerial duty,'" Cal. Trout, Inc.

v. Superior Court, 218 Cal. App. 3d 187, 202 (1990) (citation

omitted), it cannot compel a purely contractual obligation.  See

Cal. Teachers Ass'n v. Governing Bd., 161 Cal. App. 3d 393, 399

(1984) (mandamus cannot compel arbitration agreement because

"participation in arbitration[] is not an act required by law").

Thus, only section 12012.90, which imposes a nondiscretionary

duty on defendant to disburse RSTF payments within forty-five

days of the end of each quarter, could give rise to a mandamus

claim.

Nonetheless, even if plaintiff could successfully

assert a mandamus claim against defendant in state court,

plaintiff could not have brought that claim in federal court.

See Matheson v. Progressive Speciality Ins. Co., 319 F.3d 1089,

1090 (9th Cir. 2003) ("Any civil action may be removed to federal

district court so long as original jurisdiction would lie in the

court to which the case is removed.").  This court could exercise

jurisdiction over plaintiff's writ of mandamus claim only if the

claim "necessarily turn[s] on some construction of federal law,"

Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 808 (1986)

(citation omitted), or "necessarily raise[s] a stated federal

issue, actually disputed and substantial, which a federal forum

may entertain without disturbing any congressionally approved

balance of federal and state judicial responsibilities." Grable

& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308,

314 (2005).

Subsection 12012.90(e), the source of any possible

mandamus claim, neither turns on the construction of a federal

law nor raises an important federal issue.  See Cabazon Band of

Mission Indians v. Wilson, 124 F.3d 1050, 1056 (1997) (noting the

importance of the federal interest at stake when determining

whether federal question jurisdiction exits).  To the contrary,

it is a budgetary statute that provides for earlier allocation of

funds to the RSTF so that defendant can distribute RSTF funds on

a quarterly basis.  While the Compacts, and defendant's duties

created therein, are lurking in the background of any state law

claim regarding RSTF funds, the federal component (IGRA) is too

far removed to create federal question jurisdiction.  See, e.g.,

Rains v. Criterion Systems, Inc., 80 F.3d 339, 344 (9th Cir.

1996) (in wrongful termination action, direct and indirect

references to Title VII are not sufficient to establish federal

jurisdiction).

3.   California Code of Civil Procedure Section 1060

Plaintiff also bases its claims on section 1060 of the

California Code of Civil Procedure, which allows "[a]ny person

interested under a written instrument" to obtain a declaratory

judgment resolving "actual controversy relating to the legal

rights and duties of the respective parties . . . ."  Cal. Civ.

Proc. Code § 1060.  Section 1060 cannot give rise to federal

jurisdiction unless plaintiff could seek the same relief under

21

1   the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201-

2   2202.  See Franchise Tax Bd. of State of Cal. v. Constr. Laborers

3   Vacation Trust for S., 463 U.S. 1, 18 (1983) ("If federal

4   district courts could take jurisdiction, either originally or by

5   removal, of state declaratory judgment claims raising questions

6   of federal law, without regard to the doctrine of Skelly Oil [Co.

7   v. Phillips Petroleum Co., 339 U.S. 667 (1950)], the federal

8   [DJA]--with the limitations Skelly Oil read into it--would become

9   a dead letter.").

10        To assert a claim under the DJA, an independent basis

11  for federal jurisdiction must exist because the DJA "does not by

12  itself confer federal subject-matter jurisdiction . . . ."

13  Nationwide Mut. Ins. Co. v. Liberatore, 408 F.3d 1158, 1161 (9th

14  Cir. 2005).  Because section 15.1 of the Compacts expressly

15  prohibits third parties from "enforcing" the Compacts, plaintiff

16  could seek a declaratory judgment with respect to its rights

17  under the Compacts only if such relief did not constitute

18  "enforcing" the Compacts.

19        The Ninth Circuit has distinguished between declaratory

20  relief that seeks to "enforce" the terms of a contract from such

21  relief that seeks only to "interpret" that contract.

22  Transamerica Occidental Life Ins. Co. v. DiGregorio, 811 F.2d

23  1249, 1252 (9th Cir. 1987).  Here, the declaratory judgment

24  plaintiff requests amounts to an effort to "enforce" the Compacts

25  because plaintiff seeks to "establish[] that the party against

26  whom it is brought is charged with carrying out [a] [] duty which

27

28

                              22

1   that party is allegedly disregarding."[10]   <u>Id.</u>

2          Therefore, because section 15.1 of the Compacts

3   effectively precludes plaintiff from seeking a declaratory

4   judgment to enforce defendant's alleged duties, neither section

5   1060 nor the DJA give this court jurisdiction to hear plaintiff's

6   claim for declaratory relief.

7          Because plaintiff is not entitled to relief under the

8   aforementioned state statutes, the court need not address whether

9   any of plaintiff's purported statutory claims give rise to

10  federal question jurisdiction.  Accordingly, because plaintiff's

11  Complaint does not plead any claims giving rise to federal

12  question jurisdiction, this court lacks subject matter

13  jurisdiction and must remand the case to state court, thereby

14  rendering defendant's motion to dismiss and the motion to

15  intervene moot.

16         IT IS THEREFORE ORDERED that plaintiff's motion to

17  remand the action to state court be, and the same hereby is,

18  GRANTED.

19         This matter is hereby REMANDED to the Superior Court of

20  the State of California in and for the County of San Diego.

21  DATED:  July 23, 2008

22

23  _____
    WILLIAM B. SHUBB

24  UNITED STATES DISTRICT JUDGE

25

26

27         [10]   Similarly, section 15.1 precludes the plaintiff from
    seeking an injunction pursuant to California Code of Civil
28  Procedure section 526(7) to enforce the Compacts.

23